UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JASON WILLIAMS,<br><br>        Plaintiff,<br><br>   vs.<br><br>BANK OF AMERICA, N.A., AS SUCCESSOR TO COUNTRYWIDE HOME LOANS, INC., a Delaware corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Delaware corporation; RECONTRUST COMPANY, N.A., a corporate of unknown origin and a wholly-owned subsidiary of Bank of America, N.A.; BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS of CWABS, INC., ASSET BACKED CERTIFICATES, SERIES 2005-6; a corporation; and DOES 1-10 as individuals or entities with an interest in the property commonly known as: 3651 N. Dixon Ave., Meridian, Idaho 83646,<br><br>        Defendants. | Civil No. 1:11-cv-00383-BLW-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' MOTION FOR JUDICIAL NOTICE**<br>**(Docket No. 6)**<br><br>**DEFENDANTS' MOTION FOR JUDICIAL NOTICE IN SUPPORT OF REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br>**(Docket No. 16)**<br><br>**and**<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**DEFENDANTS' MOTION TO DISMISS**<br>**(Docket No. 5)**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT AND EXTEND THE SCHEDULING ORDER DEADLINE**<br>**(Docket No. 19)** |

    Now pending before the Court are Defendants' (1) Motion to Dismiss (Docket No. 5), (2) related Motion for Judicial Notice (Docket No. 6), and (3) Motion for Judicial Notice in Support of Reply Memorandum in Support of Motion to Dismiss (Docket No. 16).  Also pending before the Court is Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 1**

Deadline (Docket No. 19).  Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court hereby enters a Memorandum Decision and Order as to Defendants' Motion for Judicial Notice (Docket No. 6) and Defendants' Motion for Judicial Notice in Support of Reply Memorandum in Support of Motion to Dismiss (Docket No. 16); the Court also hereby enters a Report and Recommendation as to Defendants' Motion to Dismiss (Docket No. 5) and Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling Order Deadline (Docket No. 19).

## I. BACKGROUND

Plaintiff alleges that, on or around May 13, 2005, he financed the purchase of real property located at 3651 N. Dixon Avenue, Meridian, Idaho, 83646 (the "Property") with a $247,700.00 loan originated by Countrywide Home Loans, Inc. ("Countrywide"), memorialized in a promissory note (the "Note") and secured by a Deed of Trust.  *See* Pl.'s Compl., ¶¶ 1, 9-11 at pp. 2-3 (Docket No. 1).[1]  The Deed of Trust names Countrywide as the lender (later acquired

---

[1] Defendants request that the Court take judicial notice of both the Note and the Deed of Trust.  *See* Mot. for Judicial Not. (Docket No. 6).  Plaintiff does not oppose the Court taking judicial notice of the Deed of Trust (*see* Pl.'s Opp. to Mot. for Judicial Not., p. 2 (Docket No. 13)); therefore, Defendants' request is granted in this respect.  However, Plaintiff opposes the Court taking judicial notice of the Note, arguing that "[t]he authenticity of the Note is subject to reasonable dispute and is not a fact generally known within this Territorial Jurisdiction."  *Id*. at p. 5.  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (court may examine documents referred to in complaint, although not attached thereto, without transforming motion to dismiss into motion for summary judgment).  The Note, while not attached to Plaintiff's Complaint, *was* signed by Plaintiff on May 13, 2005 and *is* relied upon by Plaintiff in his Complaint.  In these respects, Plaintiff does not contend that the date, the amount, due date, or other terms of the Note are inaccurate – to be sure, the (1) Deed of Trust (which Plaintiff does not object to (*see supra*)) and (2) Assignment of Deed of Trust (attached as Ex. C to Plaintiff's Complaint) specifically refer to the Note.  Instead, Plaintiff's objection resembles an iteration of his "produce the Note" theory already presented within his Complaint.  With all this in mind, the

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 2**

by Bank of America ("BOFA"), according to Plaintiff (*see id*. at ¶¶ 9 & 12 at p. 3)), Fidelity National Title Insurance Company ("Fidelity") as the trustee, and the Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee of the beneficiary. *See* Ex. B to Dina Aff. (Docket No. 6, Att. 2).

After defaulting on his mortgage payments, Plaintiff received a Notice of Default on or around March 2, 2011. *See* Pl.'s Compl., ¶ 13 at p. 3; *see also* Ex. A to Compl. (Docket No. 1, Att. 1). As of the date of the Notice of Default, Plaintiff had not made any payments since September 1, 2008 and was $64,178.73 in arrears. *See* Ex. A to Compl. (Docket No. 1, Att. 1).

Also on or around March 2, 2011, the beneficial interest in the Note and Deed of Trust was assigned from MERS to The Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificate Holders of CWABS, Inc., Asset Backed Certificates, Series 2005-6 ("BONY Mellon"). *See* Pl.'s Compl., ¶ 23 at p. 5 (Docket No. 1); *see also* Ex. C to Compl. (Docket No. 1, Att. 3). On that date, BONY Mellon then appointed ReconTrust Company, N.A. ("ReconTrust") as successor trustee in place of Fidelity. *See* Pl.'s Compl., ¶ 25 at p. 5 (Docket No. 1); *see also* Ex. D to Compl. (Docket No. 1, Att. 4).

On July 5, 2011, Plaintiff initiated the instant action, bringing a single claim to quiet title to the property, requesting that the Court (1) require certain Defendants to produce the original Note in Court; (2) determine the Defendants' interest in the Property; and (3) award Plaintiff his

---

undersigned finds that Plaintiff's unwillingness to admit the authenticity of the Note to be inconsequential, particularly when considering the related arguments raised within Defendants' Motion to Dismiss. Accordingly, even when assuming the Note's applicability to the instant motions, Defendants' Motion for Judicial Notice (Docket No. 6) is granted. Moreover, there being no opposition to Defendants' Motion for Judicial Notice in Support of Reply Memorandum in Support of Motion to Dismiss (Docket No. 16), the Court hereby finds good cause to grant the same.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 3**

costs and attorneys' fees. *See* Pl.'s Compl., ¶¶ 1-4 at p. 9 (Docket No. 1). Generally, Plaintiff contends that Defendants lacked the authority to foreclose on the Property, owing to alleged failures within the process by which the debt was securitized. Defendants now move to dismiss under FRCP 12(b)(6). Part and parcel with his opposition to Defendants' Motion to Dismiss, Plaintiff also seeks leave to amend his Complaint.

## II. REPORT

**A.     Defendants' Motion to Dismiss (Docket No. 5)**

Though at times difficult to clearly discern[2] (in his Complaint, opposition to Defendants' Motion to Dismiss, and during oral argument), Plaintiff seems to argue that the securitization of his mortgage clouded title to the Property. More particularly, Plaintiff alleges that (1) MERS did not have any valid interest in the Deed of Trust and, thus, without any authority to assign its interest, (2) BONY Mellon did not have the authority to appoint ReconTrust as successor trustee or to carry out a non-judicial foreclosure sale. *See* Pl.'s Compl. ¶¶ 19-26 at p. 5 (Docket No. 1). Plaintiff also points to other alleged irregularities that he believes "cast serious doubt on the legitimacy and legal effectiveness of the pre-foreclosure documents." *See id*. at ¶ 39 at p. 8 (referring to Pl.'s Compl., ¶¶ 31-38 at pp. 6-8). Plaintiff filed this action "to determine the interests of BONY Mellon, BOFA, MERS, and ReconTrust." *See id*. at ¶ 40 at p. 8. Plaintiff also requests that Defendants be required to produce the original Note. *See id*. at ¶ 27 at p. 6, ¶ 1 at p. 9.

---

[2] *See, e.g.*, Pl.'s Opp. to Mot. to Dismiss, p. 12 (Docket No. 12) ("Plaintiffs allege because of COUNTRYWIDE/BOFA and MERS and the securitization process; its shortcomings and failures that defendants failed to comply with the terms and conditions of the pooling and Service Agreement (if there even was one) and New York trust law as to the purported conveyance of the borrowers loan to the trust.").

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 4**

1. <u>Legal Standard for Motions to Dismiss</u>

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie the decision in *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *See id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 5**

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts.").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[3] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

---

[3] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting, in part, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ." Given *Twombly* and *Iqbal's* rejection of the liberal pleading standards adopted by *Conley*, a question arises whether the liberal amendment policy of *Harris v. Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See, e.g.*, *Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 6**

  2.  Quiet Title Actions and Pleading Tender

In Idaho, a quiet title "action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." Idaho Code § 6-401. The "purpose of a quiet title action is to establish the security of title." *Roselle v. Heirs and Devisees of Grover*, 789 P.2d 526, 529 (Idaho Ct. App. 1990).

The record in this case does not reflect that any foreclosure sale has occurred with respect to the Property – as of the date that Defendants' Motion to Dismiss was fully briefed, as well as at the time of oral argument on June 14, 2012, nothing in the record suggests that Plaintiff is not still the Property's owner-of-record. However, fatal to Plaintiff's quiet title claim is his failure to plead tender. "A mortgagor cannot without paying his debt quiet title as against the mortgagee." *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952). This is true even where the mortgagee has failed to pursue a foreclosure action within the applicable statute of limitations. *Id.*; *see also In re Mullen*, 402 B.R. 353, 358 (Bankr. D. Idaho 2008). Plaintiff has not included an assertion in his Complaint that he tendered payment of his debt obligation.[4] Without evidence, or even an assertion that Plaintiff can or is willing to tender payment on his loan, he cannot succeed on his quiet title action as a matter of law. *See Cherian v. Countywide Home Loans, Inc.*, 2012 WL

---

[4] To the extent Plaintiff argues in his opposition to Defendants' Motion to Dismiss that, even "if [he] wanted to cure the default or tender" he does not know to whom payment should be made (*see* Pl.'s Opp. to Mot. to Dismiss, pp. 15 & 25 (Docket No. 12)), the Note specifically provides the amount of each payment, while outlining the address for sending payments. *See* Ex. A to Dina Aff. (Docket No. 6, Att. 2). Presumably, previous payments were received by the holder of the Note, as Plaintiff does not allege otherwise, and the Notice of Default issued once he ceased making payments.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 7**

2865979, *2 (D. Idaho 2012) (citing *Hobson v. Wells Fargo Bank, N.A.,* 2012 WL 505917, *3 (D. Idaho 2012) (quoting *Trusty*, 249 P.2d at 817)). Having not alleged tender, Defendants' Motion to Dismiss Plaintiff's quiet title claim is properly granted. *Id.*

Plaintiff argues that requiring tender defeats the purpose of a quiet title action because he will not discover who the true owner, or Note holder is, and that title will remain clouded until the true Note holder is determined. *See* Pl.'s Opp. to Mot. to Dismiss, p. 25 (Docket No. 12) ("Under the circumstances in this claim, before tender can be addressed, Plaintiff asserts that the Court should first determine the true creditor and its standing as the real party in interest to demand or collect such tender."). "Even assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title[;] [r]ather, the security instrument itself is the cloud upon [Plaintiff's] title." *Bacon v. Countrywide Bank FSB*, 2012 WL 642658, *7 (D. Idaho 2012) (citing *Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*, 226 F. 634, 639 (9th Cir. 1915) (explaining that deed, which operates as mortgage, constitutes cloud on title)). "Unless and until the Note Holder fails to produce clear title and a warranty deed upon tender, [Plaintiff] may not fail to comply on [his] part with the provisions of the Note requiring payment." *Bacon* 2012 WL 642658 at *7 (citing *Rischar v. Shields Et. Ux.*, 145 P. 294, 295 (Idaho 1914) (holding that purchasers of land could not refuse to tender payments on grounds that seller did not have clear title; purchasers had to tender purchase price, and could only maintain an action for damages if, at that time, seller could not produce clear title)).

Similarly, Plaintiff's allegations that Defendants failed to follow the applicable non-judicial foreclosure statutes do not excuse his lack of tender or otherwise save his quiet title

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 8**

claim. Even assuming that Plaintiff proves that Defendants did not comply with Idaho's non-judicial foreclosure statutes, he cannot quiet title in the Property because of a defect in the foreclosure process. "'This Court is not in a position to award [P]laintiff's a windfall.'" *Cherian*, 2012 WL 2865979 at *2 (quoting *Kham v. Executive Trustee Servs, LLC*, 2012 WL 967864, *15 (E.D. Cal. 2012)).

> 3. <u>The Securitization of Plaintiff's Loan and Its Transfer to Another Entity Does Not Extinguish the Security Interest or Otherwise Impact the Ability to Foreclose on the Deed of Trust</u>

Plaintiff's quiet title claim is a valid method, even if unusual in this context, to determine the rights of the parties, but only if the title is clouded in some way by the transfers at issue in this case. Without such a "cloud," the Court cannot perceive an estate or interest in real or personal property adverse to Plaintiff. As explained below, Plaintiff's title is not clouded in a present way that provides a basis for quieting title in this case.

> a. *Securitization of the Note Generally Does Not Impact the Right to Foreclose*

Plaintiff appears to allege that, when MERS included his loan in a collateralized debt obligation/mortgage-backed security, MERS lost any interest in the Note and Deed of Trust and, as a result, its and/or BONY Mellon's/BOFA's authority to appoint a successor trustee or initiate a non-judicial foreclosure sale was extinguished. *See* Pl.'s Compl., ¶¶ 19-26 at p. 5 (Docket No. 1). Plaintiff asserts that, when MERS sold the loan, "it also should have transferred its interest in the collateral, the Deed of Trust, to the same entity that owned the loan," because a "loan without a valid beneficial interest in the deed is merely an unsecured, personal loan." *See* Pl.'s Opp. to Mot. to Dismiss, p. 14 (Docket No. 12). Plaintiff also argues that "Countrywide/BOFA

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 9**

should have negotiated the note when it securitized the loan" and, likewise, the entity that purchased the pool of loans with Plaintiff's loan in it also should have received an assignment of the Deed of Trust for the security to be "backed by any mortgages." *See id* at p. 26.

This is not a new battlefield. Several courts have rejected various theories that "securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach." *West v. Bank of America*, 2011 WL 2491295, *2 (D. Nev. 2011); *see also Washburn v. Bank of America*, 2011 WL 7053617, *4-5 (D. Idaho 2011) (citing *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011) (rejecting argument that trust deed is void when separated from promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039 (N.D. Cal. 2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v. California Reconveyance Co.*, 2010 WL 2545006 (D. Nev. 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.")). More recently, the Ninth Circuit, in explaining that MERS is an electronic database that tracks the transfers of the beneficial interest in home loans, held that use of the MERS system does not eliminate a party's right to foreclose – even accepting the premise that use of MERS splits the note from the deed. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). Nothing in Plaintiff's Complaint or opposition to Defendants' Motion to Dismiss persuades this Court to depart from the reasoning in these decisions.

Moreover, from a more practical standpoint, no matter which entity is actually instituting foreclosure proceedings, only one entity is doing so, and Plaintiff does not deny that he is in

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 10**

default under the loan documents.  If Plaintiff attempted to cure his default, he has accurate information about where to send his payments and what amount to pay.  *See supra* (citing Ex. A to Dina Aff. (Docket No. 6, Att. 2)).  Plaintiff alleges no facts suggesting that any Defendant has already collected any amount in arrears or that any Defendant is attempting to collect from him a second time.  Rather, all the evidence shows that Plaintiff is over $64,000 behind on his loan payments.  He defaulted on his loan obligation and the documents he signed in connection with obtaining the loan state that the Property may be sold in a non-judicial foreclosure sale under these circumstances.  "Securitization of the loan does not discharge Plaintiff's clear contractual obligation to repay the loan."  *Cherian*, 2012 2865979 at 3.

     b.  *MERS is a Proper Beneficiary and Has Standing to Foreclose*

Plaintiff also argues that MERS is not a valid beneficiary and lacks standing to enforce the Note.  *See* Pls.' Opp. to Mot. to Dismiss, pp. 16-19 (Docket No. 12).  This position has been routinely rejected by courts, including this Court.  *See, e.g.*, *Cherian* 2012 WL 2865979 at *4 (citing *Hobson*, 2012 WL 505917 at *5).  In *Hobson*, relying in part on the Idaho Supreme Court decision in *Trotter v. Bank of New York Mellon*, 2012 WL 2865979 (Idaho 2012), this Court concluded that MERS had the authority to assign its beneficial interest in the Deed of Trust to the foreclosing bank.  *See Hobson*, 2012 WL 505917 at *5.[5]

---

[5] Regardless, the fact that MERS is named as the beneficiary does not change the rights or obligations of Plaintiff with regard to the Property.  Plaintiff is still required to meet his obligations under the loan and, if he fails to do so, the beneficiary of the Deed of Trust may initiate foreclosure, through the trustee, following the procedures set forth by Idaho's statutes.  Although this may have created "a complex payment arrangement for receiving the benefit of the obligation," it "creates no practical harm" for Plaintiff, and no basis in which to quiet title.  *See Beyer*, 800 F. Supp. 2d at 1162.  The byzantine nature of the arrangement is not, on this record, a basis on which to quiet title in Plaintiff.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 11**

Additionally, the Ninth Circuit in *Cervantes* recently rejected the "sham beneficiary" argument raised here by Plaintiff.  In *Cervantes*, the plaintiffs argued that MERS was not a true beneficiary, but rather a sham beneficiary without the authority to carry out a foreclosure sale.  *See Cervantes*, 656 F.3d at 1039.  Plaintiff makes the same argument here.  *See* Pl.'s Opp. to Mot. to Dismiss, p. 16 (Docket No. 12) ("Further, MERS is merely an electronic registry used by the lending institutions for the sole purpose of avoiding filing fees by repetitively allowing internal assigning, transferring and gambling with Trust Deeds; a sham beneficiary without the authority, or legal interest to carry out foreclosures in Idaho.").  However, in *Cervantes*, the Ninth Circuit explained that, pursuant to the loan documentation (the terms to which, like here, the plaintiffs assented), MERS was acting solely as "a nominee for Lender and Lender's successors and assigns," holds "only legal title to the interest granted by the borrower in this security instrument," and that MERS had "the right to foreclose and sell the property."  *See Cervantes*, 656 F.3d at 1039 ("In light of the explicit terms of the standard deed signed by Cervantes, it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.").

Plaintiff fails to cite any controlling authority supporting his position that MERS is a sham beneficiary.  Further, Plaintiff has not alleged any facts distinguishing this case from *Hobson*, *Trotter*, or *Cervantes*.  Consistent with these decisions, then, the Court concludes that MERS had the authority to assign its beneficial interest in the Deed of Trust.

        c.        *Defendants are Not Required to Produce the Note*

Although Plaintiff's Complaint originally requested that Defendants be required to produce the original Note (*see supra*), his opposition to Defendants' Motion to Dismiss clarifies his argument that, because "there are serious doubts concerning ownership of the loan[,] . . . it is

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 12**

appropriate, and it should be required, that the original note be produced in court to establish that at least someone is entitled to enforce the loan." *See* Pl.'s Opp. to Mot. to Dismiss, p. 21 (Docket No. 12). However, the Idaho Supreme Court recently rejected this argument, stating "a trustee may initiate non-judicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note . . . ." *Trotter*, 275 P.3d at 862. In conformance with the Idaho Supreme Court's interpretation of Idaho law, this Court rejects any argument that Defendants should be required to produce the promissory note.

> d.  *Defendants Properly Recorded Title and Assignment Documents in Compliance with Idaho's Foreclosure Statutes*

Plaintiff and Defendants agree that, according to Idaho Code section 45-1505(1), "[t]he trustee may foreclose a trust deed . . . if: The trust deed, any assignments of the trust deed by the beneficiary, and any appointments of successor trustee are recorded in mortgage records . . . ." *See* Pl.'s Opp. to Mot. to Dismiss, p. 20 (Docket No. 12); *see also* Defs.' Reply in Supp. of Mot. to Dismiss, p. 3 (Docket No. 14). With this statute in mind, Plaintiff argues that, "[d]ue to the nature of the MERS electronic registration system," the Deed of Trust was "internally assigned to new owners/trusts without ever being recorded at the county recorder's office where the Property is located. *See* Pl.'s Opp. to Mot. to Dismiss, p. 20 (Docket No. 12). However, as Defendants point out, the Assignment of Deed of Trust was recorded on March 2, 2011 as Instrument No. 111018801 and the Notice of Default was recorded thereafter as Instrument No. 111018803. *See* Defs.' Reply in Supp. of Mot. to Dismiss, p. 3 (Docket No. 14) (citing Exs. A & C to Compl. (Docket No. 1, Atts. 1 & 3). Thus, on its face, Plaintiff does not allege any facts to support his claim that Defendants failed to comply with Idaho's foreclosure statutes by failing to

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 13**

record the Deed of Trust's assignment.  *See Cherian*, 2012 WL 2865979 at *3 & *6 (in addition to characterizing plaintiff's allegations in this respect as "purely conclusory and speculative," finding recording of Assignment of Deed of Trust in context of plaintiff's contemporaneous motion to amend).

Plaintiff's related claims of fraudulent signatures at the hands of "robo-signers" are similarly unfounded.  *See* Pl.'s Compl., ¶¶ 33-38 at pp. 7-8 (Docket No. 1); *see also* Pl.'s Opp. to Mot. to Dismiss, pp. 2-3 (Docket No. 12).  Conclusory allegations of fraud, supported only by references to cross-outs, inter-lineations, signature comparisons, and conjectural theories, are simply not enough to halt the foreclosure process – again, when recognizing the undisputed fact that Plaintiff is (and has been for several years) in default and, also, that he does not claim that the documents allegedly "robo-signed" contained false information.  *See, e.g.*, *Cerecedes v. U.S. Bankcorp*, 2011 WL 2711071, *5 (C.D. Cal. 2011) (in dismissing plaintiffs' second amended complaint with prejudice, commenting that "[t]he Court is mindful of the reports of financial institutions using so-called 'robo-signers' to improperly sign documents used in the foreclosure process.  However, Rule 9(b) and *Twombly* require plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support.  Perhaps more importantly, plaintiffs do not dispute that they defaulted on their loan or that they received the notices required by [state law].") (internal citations omitted) (unpublished) (citing *Orzoff v. Bank of America, N.A.*, 2011 WL 1539897, *2-3 (D. Nev. 2011) (holding that plaintiff failed to state a claim that trustee breached its duty by "robosigning" documents related to plaintiff's loan where plaintiff did not dispute that she defaulted on her mortgage or that she received required notices.); *Bucy v. Aurora Loan Servs., LLC*, 2011 WL 1044045, *6 (S.D. Ohio 2011) (plaintiff

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 14**

failed to state a claim for fraud based on purported "robo-signing" where "Plaintiff d[id] not dispute the accuracy of any of the salient facts, such as the amount owed or the amount in default.")). Simply put, Plaintiff has not alleged any relevant fact with the requisite level of particularity establishing that Defendants did not properly record title and assignment documents in compliance with Idaho's foreclosure statutes.

For all of the above-referenced reasons, it is hereby recommended that Defendants' Motion to Dismiss be granted.

**B.    Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling Order Deadline (Docket No. 19)**

Plaintiff filed his complaint on August 16, 2011. *See* Pl.'s Compl. (Docket No. 1). On September 8, 2011, Defendants filed their Motion to Dismiss. *See* Defs.' Mot. to Dismiss (Docket No. 5). Within Plaintiff's October 10, 2011 response to Defendants' Motion to Dismiss, Plaintiff states that, "[i]f any claims are insufficiently pled, Plaintiff requests leave to amend." *See* Pl.'s Opp. to Mot. to Dismiss, p. 28 (Docket No. 12). Then, on February 9, 2012, this Court entered a Case Management Order, outlining a February 27, 2012 amendment deadline. *See* 2/9/12 CMO, p. 2 (Docket No. 18). On February 17, 2012, Defendant formally moved to amend his Complaint. *See* Pl.'s Mot. to Am. (Docket No. 19).

FRCP 15(a) is a liberal standard and leave to amend "shall be freely given when justice so requires." *Leadsinger, Inc. v. BMB Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). However, the district court has discretion in deciding whether to grant leave to amend, taking into consideration whether there has been "undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . ., [and]

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 15**

futility of amendment." *Id*. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Prejudice is the most important factor to consider in this analysis.  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).  Moreover, "the Court must also consider the good cause standard under FRCP 16(b)(4) when an amendment requires extension of deadlines in a Case Management Order."  *Swendsen v. Corey*, 2012 WL 465722, *1 (D. Idaho 2012).

      Here, Plaintiff fails to offer any real justification for amending his Complaint.  Aside from simply stating that "[t]he servicer and other relevant defendants and causes of action should be added to the claim," (*see* Pl.'s Mot. to Am. (Docket No. 19)), Plaintiff offers no other substantive arguments for why an amendment is necessary in this case.  Additionally, it is clear to the undersigned that the already-discussed deficiencies in Plaintiff's Complaint will not be cured by vague (and, up to this point, unknown) references to "other" defendants and causes of action, rendering the relief sought futile.  *See, e.g.*, *Sykes v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 914922, *10-11 (D. Idaho 2012).  Finally, it cannot be said that Plaintiff's amendment efforts are not without (1) undue delay (six months after his Complaint was filed), (2) dilatory motives (the same exact motion was filed in at least two other, similar cases), and (3) prejudice to Defendants (action is nearly a year old already and Plaintiff has not made regular monthly payments since September 2008).  *See* Defs.' Opp. to Mot. to Am., pp. 5-8 (Docket No. 22).[6]

      These shortcomings cut against Plaintiff's arguments in support of amending his Complaint under FRCP 15 (saying nothing of the more stringent "good cause" standard under

---

[6] Plaintiff did not reply to the arguments raised within Defendants' opposition to Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling Order Deadline.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 16**

FRCP 16(b)(4)).  It is therefore recommended that Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling Order Deadline be denied.

### III.  RECOMMENDATION

Based upon the foregoing, IT IS HEREBY RECOMMENDED THAT (1) Defendants' Motion to Dismiss (Docket No. 5) be **GRANTED**, and (2) Plaintiff's Motion for Leave to Amend the Complaint and Extend the Scheduling Deadline (Docket No. 19) be **DENIED**.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

### IV.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that (1) Defendants' Motion for Judicial Notice (Docket No. 6), and (2) Motion for Judicial Notice in Support of Reply Memorandum in Support of Motion to Dismiss (Docket No. 16) are **GRANTED**.

DATED:  **August 10, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION- 17**